IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JONA B. HEFFNER,

        Plaintiff,                                          Civ. No. 6:16-cv-01967-MC

        v.                                                   OPINION AND ORDER

NANCY A. BERRYHILL,
Commissioner of the Social Security
Administration,

        Defendant.

_____

MCSHANE, Judge:

Plaintiff Jona Bernae Heffner brings this action for judicial review of the Commissioner's decision denying her application for disability insurance benefits ("DIB"). This court has jurisdiction under 42 U.S.C. §§ 405(g).

On December 13, 2012, Heffner protectively filed a Title II application for DIB, alleging disability as of June 13, 2012. Tr. 9.[1] During the hearing before the administrative law judge ("ALJ"), Heffner amended her alleged onset date to January 1, 2014. Tr. 9. After the ALJ concluded Heffner was not disabled, Hefner filed this appeal.

Heffner argues the ALJ erred in rejecting the opinion of her treating physician, her subjective complaints of symptoms and limitations, and the opinion of her partner. Because the Commissioner's decision is based on proper legal standards and supported by substantial

___

[1] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

evidence, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

A reviewing court shall affirm the decision of the Commissioner of Social Security if her decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the district court must review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's decision. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

At step two, the ALJ found that Heffner had the following severe impairments: orthostatic hypotension; vertigo with no evidence of labyrinthine disorder; moderate cervical degenerative disc disease and degenerative joint disease; anxiety; and depression. Tr. 11. In formulating Heffner's RFC, the ALJ concluded that Heffner could perform sedentary work with the following limitations: she is unable to use a computer screen or video monitor; and she can carry out only simple instructions in a setting with no public contact and no team assignments. Tr. 14. Based on the vocational expert's ("VE") testimony, a person with Heffner's RFC could perform the jobs of addressor, sorter, or electronic inspector. Tr. 21, 58. As noted, Heffner makes several assignments of error.

**I.** **Weight Assigned to the Opinion of Dr. Cullen**.

I turn first to Heffner's argument that the ALJ improperly rejected the medical opinion of her treating physician, Dr. Clark Cullen. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). Generally, a treating doctor's opinion is entitled to more weight than an examining doctor's opinion, which in turn is entitled to more weight than a reviewing doctor's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). When a treating physician's opinion is contradicted by another medical opinion, the ALJ may reject the treating physician's opinion only by providing "specific and legitimate reasons supported by substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Dr. Cullen has been Heffner's primary care physician since February 2013. Tr. 391. On March 4, 2015, Dr. Cullen completed a "Dizziness Medical Source Statement" ("DMMS")

outlining his opinion on Heffner's functional limitations. Tr. 391-95. Dr. Cullen opined that Heffner's was incapable of low-stress work because, "as a consequence of relentless dizziness and incapacity her mental state is fragile." Tr. 393. Dr. Cullen described Heffner's dizziness episodes as "24/7 constant." Tr. 391. He noted Heffner used a walker to prevent falls. Tr. 391-92. Heffner suffered visual disturbances and mood changes, exhaustion, mental confusion, and severe headaches. Tr. 391. These symptoms were "incapacitating" and lasted all day, every day. Tr. 391-92. According to Dr. Cullen, Heffner had "no good days."

The ALJ gave little weight to Dr. Cullen's opinion because it conflicted with his own treatment notes. Tr. 18. A "discrepancy" between a doctor's examination notes and his medical opinion "is a clear and convincing reason for not relying on the doctor's opinion." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An examination of Dr. Cullen's treatment notes against his opinions in the DMMS supports the ALJ's conclusion to assign little weight to Dr. Cullen's opinion.

The same day Dr. Cullen filled out the DMMS, he examined Heffner and reported that she had normal gait and ambulation, normal coordination, and normal movement in all extremities. Tr. 18, 453. Dr. Cullen described Heffner as "healthy-appearing," having "normal mood and affect," and presenting with "good judgment." Tr. 18, 453. Dr. Cullen recorded the above objective findings upon physical examination despite Heffner's report that day of "no change in incapacitating dizziness." Tr. 453. At a November 2014 examination—Heffner's last appointment with Dr. Cullen before Dr. Cullen filled out the DMMS—Dr. Cullen noted Heffner's report that although she still felt as if she was "on a boat on an ocean," her "severe vertigo episodes have subsided." Tr. 397. At that appointment, Heffner was fully oriented, ambulated normally with normal movement of all extremities, and had no ataxia. Tr. 397. The

objective findings Dr. Cullen reported on the two appointments closest in time to the DMMS mirrored those reported by Dr. Cullen during earlier appointments. *See* Tr. 16, 265 (describing "normal" mental status and ambulation); 275 (reporting "no ataxia" and normal Romberg sign); 278 (stating that Heffner was "ambulating normally" and appeared "active and alert"); 397 (noting that Heffner was "active and alert" and was also "laughing"). The contrast between Doctor Cullen's examination notes and the severe restrictions in the DMMS is a clear and convincing reason for assigning his opinion little weight. *Bayliss*, 427 F.3d at 1216.

Hefner points to notes from Dr. Cullen that she argues supports Dr. Cullen's opinion as stated on the DMSS. For example, Heffner cites Dr. Cullen's notes from October 31, 2013, describing Heffner's near suicidal depression with daily crying spells and "[d]izziness feels like constant waves x 6 months." Pl.'s Br. at 9 (quoting Tr. 265). Yet in his objective findings from the physical exam that day, Dr. Cullen noted Heffner exhibited "good judgment," was "active and alert" and "fully oriented," and had "normal mood and affect[.]" Tr. 265. Similarly, Heffner points to another report where Dr. Cullen wrote that Heffner's vertigo was "constantly present" and her symptoms were "steadily present, relentless." Pl.'s Br. at 10 (quoting Tr. 277). Once again, in documenting his objective findings upon physical examination from that same visit, Dr. Cullen noted that Heffner was "fully oriented," "healthy appearing," with a "normal Romberg" and normal gait and ambulation. Tr. 278. Heffner's arguments fail because the notations cited are merely Dr. Cullen's recitations of Heffner's self-reported symptoms. As described below, the ALJ did not err in finding Heffner less-than fully credible as to the extent of her symptoms.[2]

Finally, Dr. Cullen clarified in the DMMS that the results of Heffner's upcoming tilt-table test "would help clarify the severity of [Heffner's] impairments and limitations." Tr. 394.

---

[2] "An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (internal quotations omitted).

Two weeks after Dr. Cullen completed the DMMS, Heffner underwent the tilt-table test. Tr. 449. Dr. Mark Huth, who performed the test, noted that it was an "[u]nremarkable tilt table without heart rate and blood pressure changes despite symptoms of vertigo." Tr. 449. Dr. Huth noted that despite Heffner's complaints of "almost constant vertigo . . . there really did not appear to be any correlation between tilt and symptomatology." Tr. 449. The discrepancy between objective testing results and Dr. Cullen's opinions provide further support for the ALJ's weighing of the evidence.

The inconsistencies between Dr. Cullen's examination notes and his opinions in the DSSM constitute specific and legitimate reasons for assigning minimal weight to his opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (ALJ must provide specific and legitimate reasons supported by substantial evidence in the record for rejecting treating opinion in favor of contradicting nontreating opinion); *Bayliss*, 427 F.3d at 1216; 20 C.F.R. § 404.1527(c).[3] Although Heffner argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *See Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996))).

---

[3] Dr. Cullen's opinion that Heffner was unable to perform even low stress work was contradicted by several other medical opinions in the record. *See* Tr. 82-84 (Dr. Meyers opined Heffner could perform reduced range of light work); Tr. 68-69, 80-81 (Drs. Kennemer and Holmes opined Heffner's mental health imparments were non-severe). As Dr. Cullen's opinions were contradicted, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record for discounting his opinion. *Andrews*, 53 F.3d at 1041; *Bayliss*, 427 F.3d at 1216.

6 – OPINION AND ORDER

## II. Weight of the Claimant's Testimony

Next, I turn to Heffner's argument that the ALJ erred in finding her less-than credible. "Where, as here, Claimant has presented evidence of an underlying impairment and the government does not argue that there is evidence of malingering, we review the ALJ's rejection of her testimony for 'specific, clear and convincing reasons.'" *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a wide range of factors in assessing credibility." *Ghanim*, 763 F.3d at 1163. These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir. 2007). The ALJ in this case supported her credibility determination with references to several of the above factors.

Heffner testified to extreme limitations. At the hearing, Heffner stated that she suffered from "constant" and "extreme dizziness," amplified "upon simple exertion such as walking around, talking, taking a shower." Tr. 37. In describing symptoms from her daily dizziness episodes, on a one-to-ten scale, with a ten meaning Heffner would have to be hospitalized, Heffner's average dizziness rated a seven. Tr. 49. In the morning, Heffner could shower on her own, and then stand up for up to 30 minutes before having to lay down until mid-afternoon. Tr. 39. In the mid-afternoon, Heffner would move from her bedroom to the living room, where she would sit in a chair until bedtime at 9:30 p.m. Tr. 40. Heffner testified this was the extent of her

7 – OPINION AND ORDER

daily activities for the past 16 months. Tr. 41. Other than some light dusting over one year earlier, Heffner performed no household chores. Tr. 41. Heffner could walk maybe three minutes at a brisk pace, and five minutes at a regular pace, before needing to sit down and rest. Tr. 42. Even activities like brushing her teeth resulted in increased dizziness. Tr. 51. Approximately once a week, Heffner suffered a panic attack during which she might lose control of her bowels. Tr. 44-45. Heffner did not attend social functions because she felt uncomfortable being around people. Tr. 45-46. Heffner suffered daily headaches, lasting from six hours to all day. Tr. 47. Despite these severe symptoms, Heffner had a driver's license and occasionally drove herself to appointments. Tr. 38-39. Heffner dressed and showered without assistance. Tr. 42.

The ALJ ultimately found that the objective medical evidence did not support the severity of Heffner's subjective complaints. If a claimant seeks disability based on subjective symptoms, they must produce objective medical evidence that supports the symptoms they allege, but they "need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." *Corless v. Comm'r of Soc. Sec. Admin.*, 260 F. Supp. 3d 1172, 1176 (D. Ariz. 2017) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996))). Further, the ALJ may reject a claimant's allegations that "do not comport with objective evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

Regarding Heffner's subjective symptoms from vertigo, the ALJ found that the objective medical evidence did not support her testimony. Tr. 17-18. Instead, the ALJ found that the evidence only indicated that Heffner "frequently complains of vertigo symptoms, but [Heffner] did not display clinical evidence of such. Tr. 17. On June 18, 2012, Heffner had a Hall-Pike test that only elicited "mild vertigo." Tr. 306. The neurological examination revealed "no focal deficits," along with no indication of nystagmus. Tr. 306. Heffner also had a tilt-table test done

on March, 16, 2015. Tr. 449. As described above, Dr. Huth noted that test was an "[u]nremarkable tilt table without heart rate and blood pressure changes despite symptoms of vertigo." Tr. 449. Because Heffner's subjective symptoms from vertigo did not comport with results from several objective tests, the ALJ did not err in finding Heffner's statements as to the severity of her limitations not entirely credible. *Bray*, 554 F.3d at 1227; Tr. 17.

Heffner also alleged that she struggled to walk and had adopted the use of a walker, even though she was not prescribed it by a physician. Tr. 37. The medical record, however, demonstrates that multiple examinations failed to indicate any physical limitations that would require the use of an assistive device. *See* Tr. 275 (noting "no ataxia" and normal Romberg test); Tr. 278 (indicating that Heffner had "normal" gait and station, "no ataxia" on coordination test, "normal" motor strength and muscle tone, and unremarkable Romberg); Tr. 304 (noting "normal gait and station" and "normal tone and motor strength"); Tr. 323 ("Normal MRI of the Brain."). Based on this extensive evidence, the ALJ concluded that Heffner's use of a walker was not supported with "documented objective medical necessity" and that the physical examinations indicated that Heffner was capable of "ambulat[ing] independently with a normal gait and station." Tr. 18. The ALJ did not err in utilizing "ordinary techniques of credibility evaluation" in weighing the validity of Heffner's self-reported limitations. *Ghanim*, 763 F.3d at 1163; *Lingenfelter*, 504 F.3d at 1040.

Heffner also alleged that she had disabling difficulties with concentration, anxiety, and depression. The ALJ cited objective medical evidence contradicting these allegations. Tr. 18. The ALJ discussed multiple examinations that described "mostly normal mood and affect, intact memory, and good concentration and attention." Tr. 18, 275, 312, 400, 406. For instance, one treating physician indicated that Heffner was "alert and cooperative," had "normal mood and

affect," and exhibited "normal attention span and concentration." Tr. 312. Another physician described Heffner as having "normal mood and affect" and being "active and alert." Tr. 400. A third physician administered a Mini-Mental Status Examination that Heffner scored a 29 out of 30 on. Tr. 18, 301. That physician described Heffer as pleasant and cooperative. Tr. 301.

While Heffner argues the above notes were not indicative of her everyday symptoms, the ALJ noted that despite alleging disabling mental health issues, there was a significant absence of mental health treatment within the medical record.[4] Tr. 18. Heffner was examined at the Jackson County Health & Human Services facility by Dr. Chy Porter on July 25, 2014. *See* Tr. 366-69. Dr. Porter assigned Heffner a Global Assessment of Functioning ("GAF") score of 38. Tr. 19, 369. However, despite such a dire initial assessment, her severe alleged mental limitations, and her own acknowledgment that she would benefit from counseling, Heffner failed to respond to multiple follow-ups to begin a treatment plan. *See* Tr. 370-73. An ALJ may look to an unexplained failure to seek or follow a prescribed course of treatment in determining a claimant's credibility. *Fair*, 885 F.2d at 603. The ALJ did not err in pointing to Heffner's lack of treatment when determining the credibility of her subjective complaints. Tr. 18.

As noted above, the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (quoting *Fair,* 885 F.2d at 603). Because the ALJ provided "specific, clear and convincing reasons" for finding Heffner less-than credible regarding the extent of her limitations, the ALJ did not err in giving little weight to Heffner's testimony. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen*, 80 F.3d at 1282).

---

[4] During the ALJ hearing, Heffner explicitly stated that she believed that she needed to be in mental health counseling. Tr. 42. Despite this assertion, there is no indication that Heffner sought mental health counseling other than her meeting with Dr. Chy Porter. *See* Tr. 366-69.

10 – OPINION AND ORDER

### III. Weight of the Lay Testimony

Heffner argues the ALJ erred in rejecting the testimony of her partner, Katherine McCarthy. McCarthy's testimony largely mirrored Heffner's own testimony. The ALJ accorded McCarthy's testimony little weight because it conflicted with the objective medical evidence and medical opinions in the record. Specifically, the ALJ contrasted McCarthy's testimony regarding Heffner's symptoms against the objective results of the multiple diagnostic tests performed on Heffner. Tr. 19. Inconsistency with other evidence in the record is a germane reason for rejecting the testimony of a lay witness. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Further, it is not reversible error to reject lay testimony when "the lay testimony described the same limitations as [claimant's] own testimony, and the ALJ's reasons for rejecting [claimant's] testimony apply with equal force to the lay testimony." *Molina*, 674 F.3d at 1122. As noted, McCarthy's testimony essentially aligned with Heffner's own testimony, which the ALJ found to be less-than fully credible. Therefore, the ALJ did not err in assigning little weight to McCarthy's testimony.

### CONCLUSION

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 1st day of March, 2018.

                                                                                  /s/ Michael J. McShane  
                                                                                     Michael McShane  
                                                                          United States District Judge